UNITED STATES DISTRICT COURT
                                     DISTRICT OF MASSACHUSETTS

_____
                                                )
                                                )
**CRG FINANCIAL LLC et al.,**                   )
                                                )
      **Plaintiffs,**       )
                                                )
      **v.**               )       Civil Action No. 19-10182-DJC
                                                )
**TWO DIAMOND CAPITAL Corp. et al.,**           )
                                                )
      **Defendants.**       )
                                                )
_____ )

                                       **MEMORANDUM AND ORDER**

**CASPER, J.**                                                                April 4, 2019
                                            **Introduction**

     For the reasons discussed here, the Court DENIES Plaintiffs' motion for a temporary restraining order and/or preliminary injunction, D. 5, principally due to lack of irreparable harm since Plaintiffs' requested injunctive relief is primarily concerned with recouping money damages and Plaintiffs have failed to demonstrate the lack of an adequate remedy at law.

                                            **Relief Sought**

     The parties entered agreements to fund a loan facility that would be used to help a distributor, Bevriqo, Inc. ("Bevriqo"), acquire vodka inventory from Defendant Medea, Inc. ("Medea"). Plaintiffs CRG Financial, LLC ("CRG") and Claims Recovery Group, LLC ("Claims Recovery") (collectively, "Plaintiffs") seek injunctive relief against Defendant Two Diamond Capital Corp. ("Two Diamond") in connection with the loan facility and related participation agreements, namely that Two Diamond: 1) immediately pay out $21,757.83 to participants, including Plaintiffs; 2) be enjoined from keeping any or all of $26,067.75 in proceeds from sale of

                                                  1

a portion of the inventory at issue; 3) collect funds owed pursuant to a judgment in a civil action, Two Diamond Capital Corp. v. Bevriqo, Inc., et. al., Civil Action No. 17-83-cv-00865 (Mass. Super. Ct.); foreclose on security interests in Bevriqo and liquidate those security interests for the benefit of participants to the loan facility; 4) immediately provide participants with all documentation on potential sales of the vodka inventory; and 5) be enjoined from alienating assets "outside of the ordinary course of business" until further order of this Court. D. 5 at 1-2.

## Legal Standard

To prevail on its motion, CRG must establish a reasonable likelihood of success on the merits; the potential for irreparable harm if the injunction is withheld; that the balance of equities tips in its favor; and that the injunction is in the public interest. Adams v. Wells Fargo Bank, N.A., No. 16-cv-40153-TSH, 2016 WL 6275589, at *3 (D. Mass. Oct. 26, 2016) (citing Voice of The Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)). The Court has "broad discretion in deciding what evidence to consider in connection with a motion for preliminary injunction" or other injunctive relief. Rice v. Wells Fargo Bank, N.A., 2 F. Supp. 3d 25, 31 (D. Mass. 2014) (considering affidavit of bank employees over plaintiff's hearsay objection in connection with preliminary injunction).

## Relevant Factual Background

Two Diamond is an asset-based lender. D. 9 ¶ 5. On or about April 11, 2017, Two Diamond and Bevriqo entered a Loan and Security Agreement ("the "Loan Agreement") secured by a promissory note (the "Bevriqo Note") pursuant to which Two Diamond agreed to issue a $2,000,000 loan facility to Bevriqo. D. 1 ¶ 20; D. 1-8; D. 1-9. Richard Cabael ("Cabael"), a principal at Bevriqo, signed a personal guaranty in connection with the Bevriqo Note. D. 1-10. Two Diamond and Bevriqo also executed an inventory addendum pursuant to which Two Diamond

agreed to make loan advances to the Bevriqo on a revolving demand basis that were not to exceed the lesser of $1,500,000 or "60% of the Lender-approved value of [Bevriqo's] Eligible Inventory located at Gateway Warehouses, Inc." D. 1-8 at 23.

Plaintiffs and others who had agreed to help Two Diamond finance Bevriqo's loan entered into separate participation agreements with Two Diamond. See, e.g., D. 1-11 (including CRG's Participation Agreement); D. 1-12 (including Claims Participation Agreement). Pursuant to their Participation Agreements, Plaintiffs CRG and Claims agreed to pay Two Diamond $800,000 and $500,000, respectively, for a total of $1.3 million to help finance Bevriqo's loan. See D. 1-11 at 2; D. 1-12 at 2. Under the Participation Agreements, Two Diamond agreed to (1) collect and receive Bevriqo's loan interest and other payments on behalf of Plaintiffs; and (2) distribute the portion of such payments owed to Plaintiffs. D. 1-11 at 4; D. 1-12 at 4. Plaintiffs and other participants were not parties to the Loan Agreement between Bevriqo and Two Diamond.

At some point between April 11, 2017 and May 2017, Two Diamond transferred approximately $1.5 million to Medea to finance Bevriqo's acquisition of Medea's vodka. D. 1-14 at 4. In May 2017, Two Diamond paid Plaintiffs $12,638.92 in purported interest on Bevriqo's loan, and, in June 2017, Two Diamond paid Plaintiffs $17,222.26 in interest on the same. D. 1 ¶¶ 30-31. Plaintiffs allege, however, that these funds did not originate with Bevriqo, but instead, Two Diamond paid Plaintiffs from funds it had extended to Bevriqo as an advance on the loan at issue. D. 1 ¶ 32.

By July 2017, Bevriqo had defaulted on the Loan Agreement. D. 1 ¶¶ 33-34. On August 16, 2017, Two Diamond filed a civil action against Bevriqo, Cabael and others in Plymouth Superior Court. D. 1 ¶ 35. Around the same time, Two Diamond took control of Bevriqo's vodka inventory and engaged The Branford Group ("Branford"), a third-party appraiser, to help liquidate

the inventory. D. 9 ¶ 25; see D. 1 ¶ 36. Branford sold one container of vodka to a wholesaler for the State of New Hampshire Liquor and Wine Outlets. D. 1 ¶ 36. Two Diamond recovered $21,757.83 from the proceeds of this sale ("the New Hampshire Sale"). D. 1 ¶ 37. Branford has been unable to sell the remaining collateral since the New Hampshire Sale. D. 9 ¶ 27. Two Diamond's efforts at liquidation are ongoing. D. 9 ¶ 28. On May 31, 2018, Two Diamond settled with Bevriqo, Cabael and Spectrum Spirits, Inc., which was also named as a defendant in the Plymouth Action, (collectively, "Bevriqo Parties"). According to the Settlement Agreement, the Bevriqo Parties jointly owed Two Diamond approximately $2,250,000, but Two Diamond agreed to accept $2,100,000 to settle the matter. D. 1-15 at 2. Two Diamond also agreed, among other things and under limitations discussed later, to release Cabael from his guaranty and to share certain net proceeds from sales of the remaining inventory. D. 1-15 at 4-5. On June 27, 2018, Two Diamond, Bevriqo, Cabael and Spectrum filed an agreement of judgment as to the Settlement Agreement. D. 1 ¶ 43; D. 1-16. That same day, Two Diamond requested an execution on the judgment. D. 1 ¶ 44.

In December 2018, a company called Grocery Outlet submitted a purchase order for approximately 1,000 cases of Medea vodka inventory. Plaintiffs allegedly asked Two Diamond for a copy of the purchase order and for the amount to be paid to Cabael as commission for his involvement in the transaction, requests which Two Diamond allegedly has ignored. D. 1 ¶ 46.

## Discussion

*Plaintiffs are Not Likely to Succeed on the Merits.* Although Plaintiffs assert several claims, as counsel made clear at the motion hearing, they rely only on their contract claims, Count

4

I and II, for breach of contract and breach of the implied covenant of good faith and fair dealing. The Court, therefore, addresses Plaintiffs' likelihood of success on the merits of those claims.

*Breach of Contract claim.* In deciding this motion, the Court applies New York law in accordance with the choice of law provision in the Participation Agreements at issue. D. 1-11 at 8 (stating that the Participation Agreements "shall be governed and interpreted in accordance with the laws of the State of New York without reference to its conflict of Laws provisions"); D. 1-12 at 8. To recover for breach of contract under New York law, a plaintiff must prove (1) the existence of a contract between the parties; (2) performance of the plaintiff's obligations under the contract; (3) breach by the defendant; and (4) damages caused by the defendant's breach. Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011).

Reading the complaint in the light most favorable to the Plaintiffs, they allege that Two Diamond breached its contractual duties under the Participation Agreements by agreeing to release Cabael from his personal guaranty of the Bevriqo Note, D. 1 ¶ 42; see D. 6 at 10, "if and when" net proceeds from sales of the remaining vodka inventory total $1,700,000, see D. 1-15 at 4 (setting forth terms of the Settlement Agreement); agreeing to pay a portion of net proceeds to Bevriqo and Cabael, D. 1 ¶ 42; see D. 6 at 11, including (for example) net proceeds from sales of inventory in excess of $1,700,000 shall be paid 50% to Two Diamond and 50% to the Bevriqo Parties until Two Diamond receives $2,100,000 (*i.e.*, the Judgment Amount) and, in the event this occurs, agreeing to cancel the Bevriqo Note and remitting any remaining proceeds to the Bevriqo Parties, D. 1-15 at 5; reducing the principal amount of the debt that Bevriqo owes, D. 1 ¶ 42; see D. 6 at 11; D. 1-15 at 2; failing to execute on the judgment or to liquidate the remaining collateral, D. 1 ¶ 45; and retaining the proceeds of the New Hampshire Sale, D. 1 ¶ 37.

As a preliminary matter, the Court notes that the allegations in the complaint do not support Plaintiffs' assertion that Two Diamond has refused to execute the judgment associated with the Settlement Agreement or refused to liquidate the remaining collateral. To the contrary, even as alleged by Plaintiffs in the complaint, Two Diamond requested execution of the judgment shortly after entering the Settlement Agreement, D. 1 ¶ 44, it has taken control of the vodka inventory, see D. 1 ¶ 36, retained an appraiser to assist with liquidation, D. 1 ¶ 36, and, as recently as December 2018, Two Diamond was in the process of liquidating inventory, D. 1 ¶ 46.

Most of Plaintiffs' remaining breach of contract allegations concern the Settlement Agreement in the Plymouth Action. Plaintiffs contend that Two Diamond violated Section 4(f) of the Participation Agreement by entering the Settlement Agreement without Plaintiffs' consent. D. 6 at 10. Section 4(f) states, in relevant part: "[a]t any time during which Lender is administering the Loan Documents with Borrower, however, Lender will obtain the prior written consent of Participant prior to: (i) agreeing to any waiver or amendment which would reduce the principal due on the Loan; or (ii) releasing all or substantially all of the Collateral under the Loan Documents, or releasing any guarantees; . . . ." D. 1-11 at 5; D. 1-12 at 5.

Two Diamond argues that Section 4(f)'s written consent requirement applies when the Lender is "administering" the Loan Agreement in the normal course, not after a default and during the settlement of litigation, when Section 5 of the Participation Agreement controls. D. 8 at 13; see D. 1-11 at 6; D. 1-12 at 6. By contrast to Section 4(f)'s written consent requirement, Section 5(a) merely requires that Two Diamond use "reasonable efforts" to notify Plaintiffs of any "proposed material modification, wavier or exercise of rights under the Loan Documents" in the event of a default. D. 1-11 at 6; D. 1-12 at 6.

Considering the plain language of these sections, the Court is persuaded that applying the written consent requirement in Section 4(f) to the conduct at issue here would render meaningless Section 5(a)'s less demanding notice requirement. Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 493 (1989) (noting that contract provisions should be construed in a manner that "affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect"). The Court, therefore, concludes that Section 5(a)'s notice requirement governs Two Diamond's conduct in this instance.

Even upon a generous reading of the complaint, the Court has not identified allegations suggesting Two Diamond breached Section 5(a)'s notice requirement when entering into the Settlement Agreement. The Court notes that, according to the uncontroverted affidavit provided by Two Diamond's treasurer, George Gochis ("Gochis"), Plaintiffs received notice of the Settlement Agreement, including its modification of terms in the Loan Agreements, and provided comments regarding the same. See D. 9 ¶ 33(c) (explaining that Plaintiffs "were aware in advance of the terms and conditions of the Bevriqo Agreement . . . had offered comments on the same").

Plaintiffs also argue that Two Diamond's agreement to accept less than the balance purportedly owed to it as part of the Settlement Agreement violates Section 3(a) of the Participation Agreement, see D. 6 at 11-12, to the extent that section requires Two Diamond to "remit portions of principal and interest that are actually received from, or on behalf of, Borrower and proceeds of Collateral (as defined below), in each case as set forth herein, in respect of Loan Advances based on [Plaintiffs'] Participation interest therein." D. 1-11 at 3; D. 1-12 at 3. However, with the exception of the proceeds from the New Hampshire Sale, discussed below, the Court understands that Two Diamond has yet "actually" to receive any principal or interest payments from Bevriqo. By Plaintiffs' admission, Bevriqo made no sales of vodka inventory in

7

April, May, June or July of 2017 and failed to make any payments contemplated by the Loan Agreement. D. 1 ¶ 33.

With respect to the proceeds from the New Hampshire Sale, Two Diamond asserts that it is entitled to these funds as "reimbursement for interest payments" advanced to participants, including Plaintiffs, in May and June 2017. D. 8 at 15. For support, Two Diamond relies upon Section 4(h) of the Participation Agreement, which provides, in part, "[i]f Lender should for any reason make any payment to the Participant in anticipation of the receipt of funds from Borrower and such funds are not received by Lender from Borrower on the date payment is due, or if excess funds are paid by Lender to Participant as a result of a miscalculation by Lender, then Participant shall, on demand from Lender, return to Lender any of such amounts transferred to Participant by Lender." D. 1-11 at 6; D. 1-12 at 6. Section 4(h) is not controlling here, where Two Diamond unilaterally withheld Plaintiffs' portion of the proceeds from the sale at issue.

For the reasons discussed below, however, even if Plaintiffs were likely to succeed on the merits of their breach of contract claim as to Two Diamond's failure to remit a portion of proceeds from the New Hampshire Sale, Plaintiffs have not established irreparable harm as to any claim.

*Breach of Implied Covenant of Good Faith and Fair Dealing.* Plaintiffs' separate count for breach of the implied covenant of good faith and fair dealing is precluded by applicable state law and, therefore, is not likely to succeed. "Under New York Law, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim." Atlantis Info. Tech., GmbH v. CA, Inc., 485 F. Supp. 2d 224, 230 (E.D.N.Y 2007); see Harris v. Provident Life and Acc. Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002) (explaining that "parties to an express contract are bound by an implied duty of good faith, but

breach of that duty is merely a breach of the underlying contract") (quoting Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir.1992)).

*Irreparable Harm, Balance of the Equities, and Public Interest.* Here, Plaintiffs have failed to demonstrate any irreparable harm that would warrant the "extraordinary remedy" of injunctive relief. LifeScan Scotland, Ltd. v. Shasta Techs., LLC, 734 F.3d 1361, 1366 (Fed. Cir. 2013) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)).

The Court appreciates that Plaintiffs have concerns regarding Two Diamond's liquidation process and modifications to the Loan Agreement as part of the settlement in the Plymouth court action. However, under the terms of the Participation Agreement, there was no guarantee that Plaintiffs would be made whole by a certain date or within a certain timeframe. Plaintiffs also opine that they will never recoup funds owed as a result of Bevriqo's default on the Loan Agreement, however, as the First Circuit has explained, "[t]hat sort of statement can be made by virtually every person who sues another for money damages" and "[i]ts very ubiquity indicates why it cannot conceivably be enough to justify the issuance of a prejudgment injunction . . . ." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162–63 (1st Cir. 2004). Even if the parties are unable to sell the remaining inventory, there is no indication that Two Diamond is unable to make Plaintiffs whole pursuant to, for example, any future judgment on the merits. Plaintiffs, therefore, have not established they lack an adequate remedy at law.

## Conclusion

Accordingly, on this record, including but not limited to Two Diamond's ongoing efforts to liquidate the vodka inventory at issue, the executed Settlement Agreement and associated judgment and Plaintiffs' failure to demonstrate lack of a remedy at law, the Court concludes Plaintiffs' alleged harms do not warrant preliminary injunctive relief.

Although the Court need not reach them in light of its ruling above, the remaining factors, namely the balance of equities and public interest, also do not weigh in favor of granting Plaintiffs' requested relief.

For all these reasons, the Court DENIES Plaintiffs' motion for injunctive relief, D. 5.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge