UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
**CRG FINANCIAL, LLC et al.,**            )
                                          )
      **Plaintiffs,**                  )
                                          )
      **v.**                          )      Case No. 19-cv-10182-DJC
                                          )
                                          )
**TWO DIAMOND CAPITAL CORP. et al.,**     )
                                          )
      **Defendants.**                  )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                March 19, 2020

### I.   Introduction

This case arises out of a series of agreements to fund the purchase and sale of branded vodka. D. 1. Plaintiffs CRG Financial, LLC ("CRG") and Claims Recovery Group, LLC ("Claims Recovery") (collectively, "Plaintiffs") have filed this lawsuit against Defendants Two Diamond Capital Corp. ("Two Diamond") and Medea, Inc. ("Medea") in connection with the loan facility and related agreements. D. 1. Medea has moved to dismiss for lack of personal jurisdiction. D. 31. For the reasons set forth below, the Court DENIES Medea's motion. D. 31.

### II.  Standard of Review

In ruling on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, a district court applies the prima facie standard of review. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, to meet their burden

of establishing that the Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 12(b)(2), Plaintiffs must "demonstrate the existence of every fact required to satisfy both the forum's long arm statute and the Due Process Clause of the Constitution." Swiss Am. Bank, 274 F.3d at 618 (citation and quotations omitted). This showing "must be based upon evidence of specific facts set forth in the record" and "the plaintiff must go beyond the pleadings and make affirmative proof." Id. (internal quotations omitted). The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings. Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). The Court will then "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Id. Notwithstanding the liberality of this approach, the Court will not "credit conclusory allegations or draw farfetched inferences." Ticketmaster, 26 F.3d at 203.

### III. Factual Allegations

The following facts are taken from Plaintiffs' complaint, D. 1, Medea's uncontroverted, sworn affidavits in support of its motion to dismiss, D. 33, and Plaintiffs' opposition to Medea's motion to dismiss and attached affidavits in support, to the extent they are undisputed, D. 38. Medea is the owner and manufacture of Medea vodka, a premium vodka imported from the Netherlands. D. 33 ¶ 4. This action arises from a series of contracts to facilitate the funding and purchase of Medea vodka inventory. See D. 1. The funding and purchase of Medea vodka inventory happened simultaneously in two parts: the underlying transaction and Plaintiffs' funding.

A.  **The Underlying Transaction**

The underlying transaction involved an agreement between three entities for the purchase and financing of the sale of Medea vodka.  See D. 38-9.  In April 2017, Medea, Bevriqo and Two Diamond entered into two agreements, the Third-Party Agreement governing the underlying transaction, D. 38-9, and the Four-Party Agreement with the additional signatory of Gateway Warehouses, Inc., ("Gateway") which provided Two Diamond access to the warehoused collateral vodka (collectively, the "Agreements").  D. 38-9; D. 38-10.  Both Agreements contain choice of law provisions stating the Agreements "shall be construed and enforced in accordance with the laws of the Commonwealth of Massachusetts."  D. 38-9 at 4; D. 38-10 at 5.  Medea is a Delaware corporation with its principal place of business in Pleasanton, California.  D. 1 ¶ 4.  Medea has no offices, employees or presence in Massachusetts.  D. 33 ¶ 3.  Bevriqo is a California company.  D. 1 ¶ 8.  Two Diamond is a Massachusetts corporation with its principal place of business in Massachusetts.  D. 1 ¶ 3.

During the course of the negotiation and execution of the underlying transaction, Medea supplied documents and information to both Bevriqo and Two Diamond allegedly falsely representing the demand for Medea vodka in the United States.  D. 1-6; D. 38-8 ¶¶ 4-6.  Medea represented that it was ready to sell large amounts of vodka in Massachusetts and elsewhere.  D. 38-8 ¶ 4.

The underlying transaction involved two subparts:  the purchase and sale whereby Bevriqo was to purchase approximately 19,387 cases of Medea vodka, D. 1 ¶ 8; see D. 38-9, and the financing arrangement whereby Two Diamond would provide the funding to Bevriqo for the purchase in the form of the loan, D. 1 ¶ 20, D. 38-9.  The purchase and sale portion of the underlying transaction was executed in the Inventory Purchase Agreement signed by Medea and

Bevriqo. D. 33 ¶ 13. Medea understood that Bevriqo's secured lender, Two Diamond, provided the financing, id.; D. 38-9, which was governed by the Loan and Security Agreement and secured by a promissory note. Pursuant to the Loan and Security Agreement, Two Diamond would issue a $2,000,000 loan facility to Bevriqo for Bevriqo to acquire Medea vodka inventory. D. 1 ¶¶ 8, 20; D. 1-8; D. 1-9.

The purchase and sale part of the transaction and financing arrangement were expressly linked. D. 33-1 at 7. The purchase and sale agreement included several conditions precedent to the buyer's performance including the condition that the buyer obtain "a loan from Two Diamond . . . in an amount of not less than One Million Five Hundred Thousand Dollars," D. 33-1 at 7, and that "Medea, Bevriqo and Two Diamond shall have entered into a [Third]-Party Agreement," D. 33-1 at 7. The Third-Party Agreement was attached as an exhibit to the purchase and sale agreement. D. 33-1 at 7. At some point between April 11, 2017 and May 2017, Bevriqo transferred approximately $1.5 million—that originated from Two Diamond—to Medea to finance the loan. D. 33 ¶ 12-13.

**B. CRG Provides Financing to Two Diamond for the Transaction**

On March 21, 2017, Michael Kot of Two Diamond emailed CRG regarding an opportunity to participate in a loan facility. D. 1 ¶ 8; D. 1-1. The loan facility was to finance Bevriqo's purchase of Medea's vodka. D. 1 ¶ 8.

*1. Plaintiffs Rely upon Alleged Misrepresentations*

Two Diamond's communications referenced multiple purchase orders that Medea would soon receive. D. 1 ¶ 8; D. 1-1. On March 23, 2017, Kot forwarded to Plaintiffs an email from Bevriqo's Chief Executive Officer, Richard Cabael, stating that hundreds of cases of Medea vodka had been shipped pursuant to purchase orders. D. 1 ¶ 11; D. 1-3. Two Diamond sent Plaintiffs a

document captioned "Bevriqo Brands Medea Vodka Opportunity" (the "Opportunity Memo"). D. 1-5. The Opportunity Memo contained allegedly false representations about large sources of demand for Medea vodka from three buyers, Costco, Krogers and a distributor named All Star Global. D. 1-5 at 3-5. Part of the Opportunity Memo referenced sales to Costco, including sales in California and the Northeast. D. 1-5 at 4. Costco's Northeast region includes stores in Massachusetts. D. 38 at 5 & n.1. On April 6, 2017, Two Diamond forwarded allegedly false purchase orders for Medea vodka. D. 1 ¶¶ 12-13; D. 1-4. On April 7, 2017, Two Diamond sent Plaintiffs a document title "Two Diamond Capital DBA Two Diamond Business Credit Participation Opportunity" (the "Participation Memo") which further amplified the allegedly false demand for Medea vodka from Krogers and Costco. D. 1 ¶ 16 (citing D. 1-7). Plaintiffs claim that these alleged misrepresentations originated from Medea and were communicated to Two Diamond in the course of negotiating the contract. D. 1 ¶¶ 54-55; D. 38 at 1. Although it appears Two Diamond received information from Medea, D. 1-6, it also received information from Bevriqo, D. 38-8 ¶¶ 4-6. In reliance upon alleged misrepresentations about the demand for Medea vodka, D. 1 ¶ 57, the Plaintiffs each entered into Participation Agreements with Two Diamond on April 17, 2017, D. 1 ¶ 21; D. 1-11; D. 1-12.

2. *The Participation Agreements*

Pursuant to the Participation Agreements, Plaintiffs CRG and Claims Recovery agreed to pay Two Diamond $800,000 and $500,000, respectively, for a total of $1.3 million to help finance Bevriqo's loan. See D. 1-11 at 2; D. 1-12 at 2. Under the Participation Agreements, Two Diamond agreed to (1) collect and receive Bevriqo's loan interest and other payments; and (2) distribute the portion of such payments owed to Plaintiffs. D. 1-11 at 4; D. 1-12 at 4. The Participation Agreements include provisions that New York Law should apply and that the parties consent to

jurisdiction in Massachusetts. D. 1-12 at 8. Medea is not a party to the Participation Agreements. See D. 1-11; D. 1-12.

### C. Bevriqo Learns of Medea's False Statements

After Bevriqo purchased the Medea vodka inventory, Bevriqo learnt of several ongoing problems with retailers and distributors. D. 38-11. Some distributors had stopped selling Medea vodka because Medea had failed to pay marketing expense invoices. D. 38-8 ¶ 5. Distributors were unwilling to purchase new product because they already had Medea product that they were unable to sell. D. 38-11 at 4. Despite Medea's representations that Costco represented a large source of sales and soon planned to sell Medea vodka in their northeast stores, Bevriqo learned that Costco was discontinuing sales. D. 38-11 at 2. On June 10, 2017, Richard Cabael, the CEO of Bevriqo, communicated these issues and outlined Medea's alleged misrepresentations to Brandon Laidlaw, CEO of Medea. See D. 38-11.

### D. Bevriqo's Sales of Medea Vodka Falter and Bevriqo Defaults

As a result of the low demand for Medea vodka, Bevriqo was unable to make anticipated sales. D. 38 at 10. Bevriqo made no sales of Medea vodka in April, May, June or July of 2017 and made no payments to Two Diamond during this time. D. 1 ¶ 33. By July 2017, Bevriqo had defaulted on the Loan and Security Agreement with Two Diamond, D. 1 ¶ 34, which has caused subsequent damage to Plaintiffs.

## IV. Procedural History

On January 28, 2019, the Plaintiffs filed their complaint in this case. D. 1. The following day, Plaintiffs moved for a temporary restraining order against Two Diamond. D. 5. After a hearing, the Court denied Plaintiffs' motion for injunctive relief. D. 21. Medea now moves to

dismiss the complaint for lack of personal jurisdiction. D. 31. This Court heard argument on the motion and took the matter under advisement.[1] D. 54.

## V. Discussion

As the basis of this motion challenges personal jurisdiction, this Court starts by noting the citizenship of the parties. Plaintiffs CRG and Claims Recovery are both citizens of New Jersey and Delaware. D. 1 ¶¶ 1-2. Defendant Two Diamond is a Massachusetts citizen as both its principal place of business and place of incorporation is Massachusetts. D. 1 ¶ 3. Defendant Medea is a citizen of Delaware and California. D. 1 ¶ 4.

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (citations and internal quotations omitted). Accordingly, this Court may only exercise personal jurisdiction within the limits set by Massachusetts's long-arm statute and the Constitution. Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). Here, "[b]ecause the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017).

If the statutory burden is met, constitutional due process requires that a non-resident defendant "ha[s] certain minimum contacts with it such that the maintenance of the suit does not

---

[1] The Court notes that the parties have filed a number of supplemental briefs and affidavits since the initial round of briefing concluded on August 15, 2019. The Court has considered each of these filings in deciding this motion and ALLOWS the pending motion for leave to file a sur reply, D. 53, *nunc pro tunc*.

offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). This constitutional guarantee of due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co., 326 U.S. at 319). A court may exercise two types of personal jurisdiction: general and specific, Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010), which the Court will address in turn following the statutory analysis.

### E. Long-Arm Statute

Plaintiffs identify Section 3(a) of the long-arm statute as conferring jurisdiction over Medea. D. 88 at 5. Under Section 3(a), a court may exercise personal jurisdiction "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth." Mass. Gen. L. c. 223A, § 3(a) "[F]or jurisdiction to exist pursuant to § 3(a), therefore, the facts must satisfy two requirements: 1) the defendant must have transacted business in Massachusetts, and 2) the plaintiff's claim must have arisen from the defendant's transaction of such business." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 63 (D. Mass. 2001) (citing Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994)). Plaintiffs' arguments focus on two main categories of contacts: contacts associated with Medea's sales and advertising efforts of its vodka in Massachusetts; Medea's contacts with Two Diamond, a Massachusetts company.

*1. Sales Efforts of Medea in Massachusetts*

Contrary to Medea's contention that it "never [did] business in Massachusetts," D. 32 at 2, Plaintiffs have proffered documents supporting the conclusion that Medea had advertised, sold and

8

distributed its products in Massachusetts. For example, emails produced by Medea indicate that Medea advertised in Massachusetts by attending the Massachusetts Package store association's annual retail show, D. 88-3 at 3, sold Medea products to Massachusetts stores including stores in Marshfield and Braintree, D. 88-5, and at the Massachusetts liquor chain Kappy's, D. 88-7. Courts interpret the "transacting business" provision broadly to cover instances in which a defendant engages in "the purposeful and successful solicitation of business from residents of the Commonwealth." Tatro, 416 Mass. at 767. This standard is easily met here where Medea purposefully advertised, distributed and sold its products in Massachusetts. See Edwards v. Radventures, Inc., 164 F. Supp. 2d 190, 194 (D. Mass. 2001) (holding that a company that solicits business in Massachusetts and made $12,000 in sales in Massachusetts, although only to six customers, had transacted business here). Nonetheless, these actions do not sustain personal jurisdiction in this instance because the claims here do not "arise" out of these contacts.

To premise jurisdiction upon a defendant's business transaction, the "plaintiff's claim must have arisen from the defendant's transaction of such business." Id. (citing Tatro, 416 Mass. at 767). Massachusetts applies a "but for" test to determine causation. Tatro, 416 Mass. at 771 (concluding that Section 3(a) had been satisfied where "[b]ut for the defendant's solicitation of business in Massachusetts, and its agreement to provide the plaintiff with hotel accommodations in Anaheim, California, the plaintiff would not have been injured in a room of the hotel"). Here, Plaintiffs' claims do not arise out of Medea's sales, advertisement or distribution. The only claim Plaintiffs assert against Medea is fraud. Specifically, Plaintiffs assert that Medea had provided Two Diamond and/or Bevriqo with false purchase orders and otherwise misrepresented future purchase orders. D. 1 ¶¶ 12-19. These allegedly false purchase orders are separate from whatever the scope of Medea's sales efforts in Massachusetts. The allegedly false statements regarding

9

specific orders in Massachusetts exist independently of whether Medea otherwise sold product in Massachusetts—which is to say that Medea's sales and marketing efforts were not the but-for cause of the fraud alleged here. Accordingly, Medea's sales and advertising efforts in Massachusetts do not establish jurisdiction under the long arm statute.

        2.     *Medea's Engagement in the Underlying Transaction with a Massachusetts Company*

The second category of contacts Plaintiffs identify are Medea's contacts pursuant to the underlying transaction which include Two Diamond, a Massachusetts company, and were governed by agreements selecting Massachusetts law. Medea entered into two contracts with Two Diamond: the Third-Party Agreement with Bevriqo and Two Diamond and the Four-Party Agreement with Bevriqo, Two Diamond and Gateway. D. 38-9; D. 38-10. Although the "mere fact that a company in Massachusetts executes a contract with an entity in another state does not automatically mean that the foreign [entity] 'transacted business' within the meaning of the statute," Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 110 (D. Mass. 2003) (alterations in original) (quoting Energy Capital and Servs. LP, II v. Hill Refrigeration, Inc., 989 F. Supp. 353, 354 (D. Mass. 1997)), meaningful contact with a Massachusetts company and the forum will confer jurisdiction. QLS Logistic Servs., LLC v. JAWS Assocs., LLC, No. 17-CV-11891-ADB, 2018 WL 5816342, at *3 (D. Mass. Nov. 6, 2018) (concluding that where a foreign corporation entered into a contract based in Massachusetts that provided for frequent communication, the foreign corporation was subject to Massachusetts jurisdiction under the long arm statute).

Here, Medea's contacts with Two Diamond were more substantial than mere contract execution with a Massachusetts company. Although Medea disputes that it made any representations in Massachusetts, D. 33 ¶ 25, Two Diamond and Medea appeared to be in

somewhat regular contact during the course of the negotiation and execution of the Agreements.[2] For example, one email indicates that Two Diamond had just finished a call with Medea regarding closing the deal. D. 38-5. Representatives of Two Diamond, at one point, personally inspected Medea inventory. D. 10 ¶ 15. Medea provided the Branford Group, a company conducting an inventory appraisal for Two Diamond, D. 10 ¶ 12, financial information, schedules, assets and other information, which the Branford Group used to make its appraisal. D. 1-6 at 4. The choice of law provisions in the Three-Party and Four-Party Agreements, D. 38-9 at 4; D. 38-10 at 5, both elected that the parties be governed by Massachusetts law which further supports the conclusion that Medea transacted business within Massachusetts. See TargetSmart Holdings, LLC v. GHP Advisors, LLC, 366 F. Supp. 3d 195, 209 (D. Mass. 2019) (citing the fact that the contract was governed by Massachusetts law in finding that the parties had transacted business in Massachusetts). These instances collectively demonstrate that Medea's contact with Two Diamond amounted to purposeful solicitation of business in Massachusetts such that Medea can be said to have "transacted business" here in the course of its participation in the underlying transaction.[3] TargetSmart Holdings, LLC, 366 F. Supp. 3d at 209 (explaining that "[s]ince the Letter Agreement is governed by the laws of Massachusetts and was at least partly negotiated and signed in Massachusetts, it evidences [plaintiff's] intent to participate in the [C]ommonwealth's economic life . . . and is sufficient to constitute business transactions in the Commonwealth within the scope of the long-arm statute," citation and quotations omitted); Workgroup Tech. Corp., 246

---

[2] Medea asserts that this Court may not rely upon some of the statements in affidavits submitted by Plaintiffs because they are not admissible under the Federal Rules of Evidence. D. 42 at 6. Whether hearsay may be considered on a motion to dismiss for personal jurisdiction is unsettled. See Neelon, 2013 WL 2384318, at *10. The Court need not resolve this issue here as it does not rely upon these challenged statements in reaching its ruling.

[3] Given this analysis, the Court does not reach Plaintiffs' other arguments for jurisdiction under the long arm statute including jurisdiction pursuant to § 3(c) of the statute.

F. Supp. 2d 113 (holding a Nevada hotel had transacted business in Massachusetts because they actively negotiated with the Massachusetts party regarding use and made several calls, emails and facsimiles to the parties in Massachusetts); United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992) (collecting cases).

This Court must next consider whether such contact was a "but for cause of the harm." Doyle v. Merz N. Am., Inc., 405 F. Supp. 3d 186, 192 (D. Mass. 2019) (citing Tatro, 416 Mass. at 771). This inquiry "boils down to a 'but for' causation test which asks 'did the defendant's contacts with the Commonwealth constitute the first step in a train of events that resulted in the [harm].'" Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (quoting Lyle Richards Int'l, 132 F.3d at 114 ).

Plaintiffs assert that they were in the class of persons whom Medea intended or had reason to expect to rely upon their allegedly false statements even though Medea did not directly communicate with them in the course of negotiating the underlying transaction. D. 38 at 4 (citing Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co., 53 F. Supp. 3d 279, 295 (D. Mass. 2014)). Specifically, Plaintiffs allege that Medea made false statements to Bevriqo and Two Diamond in the course of negotiating and executing the underlying transactions. D. 38 at 13. Then, Plaintiffs allege, Two Diamond sent Plaintiffs these false statements both directly—by passing on false purchase orders—and indirectly by incorporating them into the Opportunity Memo and Participation Memo. D. 38 at 4-8. As such, Plaintiffs' claims arise from the allegedly false statements made by Medea during the course of the underlying transaction. That is, but for Medea transacting business within the Commonwealth—negotiating and executing the Agreements with Bevriqo and Two Diamond (and allegedly making false statements in the course

of these negotiations)—Two Diamond would not have passed these allegedly false statements on to Plaintiffs and Plaintiffs would not have relied upon them to their detriment.

Medea argues that its signing the Agreements was not the but for cause of the harm in this instance because Plaintiffs allege fraud and not any contract related claim. D. 89 at 9. It is not merely the signing of the contract, however, that constitutes transacting business in this instance. Rather it is the collective course of conduct in negotiating, executing and facilitating the underlying transaction that amounts to transacting business. Medea's allegedly false statements were made in the course of negotiating and executing the underlying transaction with Two Diamond and Bevriqo, D. 38 at 4-8, and, accordingly, arise out of the contract for the purpose of Massachusetts law. Without the negotiations and execution of the Agreements between Bevriqo, Medea and Two Diamond, the Plaintiffs would have no claim because the alleged fraudulent statements were made in the course of this transaction. See Saturn Mgmt. LLC v. GEM-Atreus Advisors, LLC, 754 F. Supp. 2d 272, 278 (D. Mass. 2010) (finding the "arising out of" requirement satisfied because the fraud claims related to the contract which constituted transacting business in Massachusetts). The Plaintiffs have satisfied this element and, thus, carried their burden to show that this Court has jurisdiction pursuant to the Massachusetts long arm statute.

## F. Due Process Analysis

Although the long-arm statute is satisfied, "[f]or jurisdiction to be proper, constitutional requirements of due process must be met." Shipley Co. v. Clark, 728 F. Supp. 818, 822 (D. Mass. 1990). The due process clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp., 471 U.S. at 471-72 (quoting Int'l Shoe Co., 326 U.S. at 319). A court may not assert jurisdiction unless "the defendant's conduct and connection with the forum

State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). There are two types of personal jurisdiction to consider in the constitutional analysis: general and specific. Cossaboon, 600 F.3d at 31.

   *1. General Jurisdiction*

For general jurisdiction, a foreign corporation, like Medea, must have "affiliations with the State" that "are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe Co., 326 U.S. at 317). The Supreme Court has explained that "[w]ith respect to a corporation, the place of incorporation and principal place of business" are the "paradigm" bases for general jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). This paradigm is not implicated here where Medea is a foreign corporation with its principal place of business in California. Although Plaintiffs press general jurisdiction in this instance, because, they argue, Medea engaged in an intense two-year Massachusetts-based effort to generate enough sales to obtain shelf space in Costco New England, D. 88 at 10, the record here is insufficient to established general jurisdiction, see United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 620 (1st Cir. 2001).

   *2. Specific Jurisdiction*

Specific jurisdiction "may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994) (quoting United Elec., 960 F.2d at 1088-89). The specific jurisdiction inquiry is threefold: relatedness, purposeful availment and reasonableness. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (quoting Northern Laminate Sales, Inc. v. Davis,

403 F.3d 14, 25 (1st Cir. 2005)). The plaintiff bears the burden of proof on all three elements. See Rodriguez v. Samsung Electronics Co., Ltd., 827 F. Supp. 2d 47, 50-51 (D. Mass. 2011).

a. Relatedness

The Plaintiffs have alleged sufficient facts to satisfy the relatedness prong as it pertains to Medea. The relatedness inquiry focuses on whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Newman v. Eur. Aeronautic Def. & Space Co. EADS N.V., No. 09-CV-10138-DJC, 2011 WL 2413792, at *4 (D. Mass. June 16, 2011) (alterations in original) (quoting Astro-Med, Inc., 591 F.3d at 9). This test "requires an 'arising from' analysis distinct from the 'but for' analysis undertaken under the Massachusetts long-arm statute." Sigros, 129 F. Supp. 2d at 67. This constitutional test is a "flexible, relaxed standard," id. (quoting Pritzker, 42 F.3d at 60–61) (internal quotations omitted), but still requires a causal relationship between the Plaintiffs' claim and Medea's forum-related conduct, Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005). Although not precisely proximate cause, "due process demands something like a 'proximate cause' nexus." Id. (quoting Cambridge Literary Props., Ltd. V. W. Goebel Porzellanfabrik G.m.b.H & Co., 295 F.3d 59, 65 (1st Cir. 2002)). "[T]he defendant's in-state conduct must form an important, or [at least] material, element of proof' in the plaintiff's case." Id. at 61 (alteration in original) (quoting United Elec., 960 F.2d at 1089). Furthermore, a court may have specific jurisdiction in situations where there is only a single contact with the forum state, but that contact must be "meaningful." Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 716 (1st Cir. 1996) (citing Burger King Corp., 471 U.S. at 475 n.18; McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

This nexus is satisfied here. Medea argues that the Plaintiffs' claim arises out of an agreement between Two Diamond and the Plaintiffs, to which Medea was not a party, and,

15

therefore, does not allege a nexus between Medea's forum based activity and the claim here. D. 32 at 15. The Plaintiffs dispute this characterization of its claim. D. 38 at 13-14. Indeed, the Plaintiffs do not allege that Medea made any false representations to them directly, but rather, allege that during the course of its negotiations with Bevriqo and Two Diamond, Medea made false representations to Two Diamond and Bevriqo regarding the demand for Medea vodka. D. 38 at 4.

"In evaluating relatedness, the [C]ourt is mindful that '[q]uestions of specific jurisdiction are always tied to the particular claims asserted.'" Cruickshank v. Clean Seas Co., 402 F. Supp. 2d 328, 336 (D. Mass. 2005) (alterations in original) (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir.1999). To state a claim for fraud, a plaintiff must allege "that the defendant has knowingly made a false statement of material fact, intending that the plaintiff rely thereon, and upon which the plaintiff did rely." Chan v. Chen, 70 Mass. App. Ct. 79, 82 (2007). Here, the allegedly false statements are allegedly false orders and assurances about demand that Medea provided to Bevriqo and/or Two Diamond in the course of negotiating the underlying transaction which Two Diamond subsequently provided to Plaintiffs, D. 1-5, and, therefore, arise out of the underlying transaction. Saturn Mgmt. LLC, 754 F. Supp. 2d at 279. Even assuming the allegedly false statements were made only to Bevriqo, they were made in the course of executing and negotiating the Agreements which were governed by Massachusetts law, involving Two Diamond, a Massachusetts company for its Massachusetts financing. But for Medea's agreement with Two Diamond, those allegedly false statements would not have been incorporated into the participation memo and passed on to Plaintiffs. The relatedness requirement is met here.

b. Purposeful Availment

"The purposeful availment requirement ensures that jurisdiction is not premised upon 'random, isolated, or fortuitous' contacts with the forum state." Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 245 (D. Mass. 2012) (citing Sawtelle, 70 F.3d at 1391). Instead, the inquiry into purposeful availment focuses on acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe Co., 326 U.S. at 319). Medea's conduct must be "voluntary and not based on the unilateral actions of another party" so that Medea could "reasonably anticipate being haled into court there." Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007) (internal quotations omitted) (first citing Burger King Corp., 471 U.S. at 475 then quoting World-Wide Volkswagen Corp., 444 U.S. at 297).

Here, Medea negotiated and entered into contracts with a Massachusetts company with whom it appears to have had somewhat regular contacts. These contacts were voluntary and suggest that Medea invoked the protection of the laws of the state. Theophile v. Conklin, No. 17-cv-10868-FDS, 2017 WL 31140363, at *3 (D. Mass. Jul. 24, 2017) (explaining that by "signing that contract with a Massachusetts resident and submitting to Massachusetts law to govern its terms, defendants purposefully availed themselves of the laws of the Commonwealth and otherwise satisfied the requirements of due process"). Moreover, the contracts Medea executed include Massachusetts choice of law provisions evidencing that Medea invoked the benefits and protections of the laws of the state and making its presence now before this Court foreseeable. Id.; see Burger King Corp., 471 U.S. at 482 (recognizing that choice of law provisions alone do not confer jurisdiction but when combined with other purposeful contacts "reinforce [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation

17

there"). Accordingly, the Court concludes that Plaintiffs have met their burden to show that Medea's "contacts with Massachusetts crossed the purposeful availment threshold." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 39 (1st Cir. 2016).

c. Reasonableness

The reasonableness inquiry is based upon a balancing of the following "Gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Cossaboon, 600 F.3d at 33 n.3 (internal quotations omitted) (quoting Harlow, 432 F.3d at 67). "The purpose of the [G]estalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." Nowak, 94 F.3d at 717.

The Court concludes that exercising personal jurisdiction over Medea would be reasonable. For the first factor to "have any significance, the defendant must demonstrate that exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." Id. at 718 (citation and internal quotations omitted). Although Medea is a non-Massachusetts corporation and would have to travel to litigate this case in Massachusetts, this does not amount to a "special or unusual burden." Blu Homes, Inc. v. Kaufmann, No. 10-CV-11418-DJC, 2011 WL 3290362, at *6 (D. Mass. July 29, 2011). Plaintiffs further contend that discovery can be done electronically and that they can coordinate a convenient place to depose Medea or do so by video conference. D. 38 at 18. This factor does not favor Medea.

Considering the second factor, "Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe, and it also has an

18

interest in providing its citizens with a convenient forum in which to assert their claims." Nowak, 94 F.3d at 718. While this normally strong interest is somewhat weakened here because the injury suffered in Massachusetts was suffered by Two Diamond not the Plaintiffs, the fact that the forum's law might govern the dispute supports Plaintiffs' argument on this factor. See Harlow, 432 F.3d at 67. Accordingly, this factor tips in favor of jurisdiction.

The third factor also weighs in favor of jurisdiction because, as the First Circuit has made clear, "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395 (citing Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 151 (1st Cir. 1995); Pritzker, 42 F.3d at 64; Ticketmaster, 26 F.3d at 211). Moreover, given involvement of Two Diamond, a Massachusetts company, some key witnesses likely reside in Massachusetts, further supports Plaintiffs' arguments on this front.

The fourth and fifth factors, as to administration of justice and the common interest of all sovereigns, favor Plaintiffs. Requiring the Plaintiffs to litigate outside of Massachusetts may require the Plaintiffs to maintain separate suits against Medea and Two Diamond. Thus, the "most efficient path" is to proceed with this already initiated lawsuit. Hasbro Inc., 994 F. Supp. at 46; see The Scuderi Group, LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 324 (D. Mass. 2008).

For all of these reasons, the Court concludes that the Plaintiffs' claims are related to Medea's contacts with Massachusetts, Medea has purposefully availed itself to Massachusetts and the exercise of jurisdiction over Medea is reasonable. Medea's contacts with Massachusetts satisfy the "minimum contacts" standard such that the resolution of this matter in Massachusetts does not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Medea's motion to dismiss. D. 31.

**So Ordered.**

/s/ Denise J. Casper<br>United States District Judge