UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CRG FINANCIAL, LLC AND CLAIMS RECOVERY GROUP, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 19CV10182(DJC) |
| v. | ) ) ) | LEAVE TO FILE REPLY GRANTED ON 4/1/21, |
| TWO DIAMOND CAPITAL CORP. and MEDEA, INC., | ) ) ) | DOCKET/ECF #137 |
| Defendants. | ) ) | |

DEFENDANT MEDEA, INC.'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT

Philip Y. Brown (BBO #552366)
Amelia R. Gray (BBO #675632)
Brown Counsel
175 Federal Street, Suite 1440
Boston, MA 02110
617-842-8375
pbrown@browncounsel.com
agray@browncounsel.com

Jules A. Epstein (*admitted pro hac vice*)
Jules A. Epstein, P.C.
100 Jericho Quad., Ste 300
Jericho, NY 11753
(516) 745-1325
jaepc1@aol.com / jaepc2@aol.com

April 8, 2021

<u>Preliminary Statement</u>

In its motion for summary judgment, Medea naturally focused its arguments on the misrepresentations that were pled in the Complaint. Having considered those arguments, and perhaps now realizing that Medea did not misrepresent the "existence of bona fide purchase orders," CRG - for the first time - seeks to expand what was pled in the Complaint to contend that what Medea really misrepresented was the overall "market demand" for Medea Vodka:

> CRG's Verified Complaint alleges that Medea knowingly made false representations about market demand for Medea, including without limitation representations concerning purchase orders for vodka.

(CRG Opp. at 2).

In support of its new "market demand" theory, CRG sets forth a litany of allegations that cast Medea as spinning a web of lies and deceit - beginning in *2015* – regarding the amount of demand by Costco for Medea vodka and the legitimacy of Allstar's agreement with Medea to purchase vodka for distribution in Latin America. (CRG Opp. at 2-10, 13-18, 20-21). CRG then chides Medea for "omitting material facts" because Medea does not address in its motion papers the "testimony and documents concerning the misrepresentations described in this opposition." (CRG Opp. at 19).

This, of course, turns the Rules of Civil Procedure on their head. Medea cannot be held to address - prospectively - allegations of misrepresentation that are set forth in an opposition brief and not alleged in the Complaint. And no defendant could address in a reply brief a whole new set of allegations that it is seeing for the first time in an opposition to a motion for summary judgment. CRG's Opposition is not only an attempt to sidestep the Rules of Civil Procedure that are designed to ensure fairness to all parties but a plain effort to undermine Medea's credibility.

1

While we cannot - in a reply memorandum – address and brief a multitude of new alleged misrepresentations that are not pled in the Complaint, for purposes of this Reply, we point out four problems with CRG's new "market demand" theory.

First, it is based on a theory of Medea making misrepresentations to Cabael to convince Cabeal/Bevriqo to buy the brand, which Cabael unwittingly "passed through Two Diamond to CRG". (CRG Opp. at 2). But Medea did **not** misrepresent market demand. Cabael did. In fact, the evidence demonstrates that Cabael made misrepresentations to both Medea and everyone else. (SMF ¶¶ 26-37, 88-94). The following chart illustrates the gross disparities between the estimates Medea actually provided to Cabael on March 14, 2017 (SMF ¶¶ 164, 181-82) and those which Cabael presented to Two Diamond (SMF ¶¶ 184-85):

|  | **Medea 3/14/17 Forecasts**[1] | **Cabael 3/21/17 Forecasts** | **Cabael 3/23/17 Forecasts** |
|---|---|---|---|
| Total Domestic Cases | 12,572 cases | 57,512 cases for Year 1 | 40,958 cases for Year 1 |
| Total Costco Cases | 672 cases |  | 29,578 cases |
| Total Kroger Cases | 10,000 cases |  | 11,390 cases |
| Annual Allstar Latin America Cases | 17,500 cases | 21,280 cases |  |

As this chart shows, the misrepresentations about market demand came from Cabael, not Medea.

Second, the new allegations of fraud that CRG claims cannot be resolved on summary judgment but are facts that simply were not pled in the Complaint and that are not related to whether the purchase orders listed in paragraphs 12 and 18 of the Complaint were bona fide. For instance, the allegation on pages 5-6 and 14-16 of CRG's Opposition that Medea's

---

[1] Medea 3/14/17 forecasts are attached as Medea SJ Ex. 24 at 2 (note that Medea did not provide any sales forecasts for Costco CA/FL as that was "TBD"); the Cabael 3/21/17 Forecasts are attached as Medea SJ EX 28 at TDCC0738; and the Cabael 3/23/17 Forecasts are attached to the Statement of Additional Fact, Response to No. 18 as Ex. 39.

CEO, fraudulently altered an email – which he categorically denied at his deposition[2] - is put forward to contend that Medea misled Cabael. But CRG is *not* Cabael, that allegation is nowhere in the Complaint, and even Cabael could not bring a fraud claim because of the merger clause in the Bevriqo Asset Agreement.[3] (SMF ¶ 43).

Third, through these new allegations, CRG is attempting recast the statement that Two Diamond makes in the Participation Memo regarding a nationwide roll-out of the vodka across both the Kroger and Costco chains as coming from Medea.[4] (See Compl. ¶ 18). But who was in between Medea and Two Diamond? - Cabael, who met with Kroger's buyer and who forecast to Two Diamond that Costco would purchase 29,578 cases in year one (Medea forecast 672 cases to Costco).

---

[2] CRG accuses the CEO of Medea, Mr. Laidlaw, of altering an email. (CRG Opp. at 5-6, 14-16). To require CRG to address this new fraud allegation in a reply brief is simply not in keeping with the Rules. For the record, Mr. Laidlaw denied altering the email. (Medea SJ Ex. 35, Laidlaw Dep. at 292, 294-95).

[3] The same can be said with regard to the allegations about Allstar in CRG's Opposition on pages 2-5, and 18-19, which suggest that Allstar was essentially a sham company that "could not perform on its contractual commitment to buy the requisite number of cases annually." (CRG Opp. at 3). First, the Complaint does not allege that Medea made any representations to CRG about Allstar's willingness and/or ability to perform under the Allstar Distribution Agreement. (SMF ¶ 155). Second, there was never any guarantee that Allstar would purchase cases since Allstar (as well as Medea) could opt out of their agreement upon 30 days' notice. (SMF ¶ 143). Third, Mr. Laidlaw testified that he had no knowledge that Allstar would not honor its contract. (SMF ¶¶ 152-155). Fourth, there was never any written recission or termination by Allstar and, in fact, Allstar ultimately shipped vodka to Mexico in 2018. (SJ Ex. 38, Stevens Dep. at 81-82). And fifth, Cabael is again in the middle: Stevens met directly with Cabael and discussed Allstar's distribution of Medea Vodka in Latin America. (SMF ¶¶ 135-140). Cabael then provided his own projections about Allstar sales to Two Diamond, which in turn passed those along to CRG. (SMF ¶¶ 183-187).

[4] In support of these new allegations, CRG on page 18 of its Opposition cites to Koch v. Greenberg 14, F. Supp. 3d 247 (SDNY 2014). However, unlike in the Koch case where the defendant was the "driving force" behind the misrepresentations in an auction catalog. Id. at 258. There, the plaintiff was among a class of persons – prospective bidders – who relied on the auction catalog. Medea was not the "driving force" behind the representations made by Two Diamond nor was CRG as a lender among the class of people to whom Medea made a statement.

Finally, Medea had no economic incentive to misrepresent market demand and therefore CRG cannot show through its new theory that Medea had an intent to misrepresent. According to CRG, the reason, purpose, and intent for Medea to misrepresent the "market demand" for Medea vodka was because "it wanted to trade poorly-selling vodka for $1.5 million in cash and needed a trading partner ignorant of the true facts." (CRG Opp. at 20). If Medea knew demand was anemic, why would it then misrepresent to Cabael that demand was robust *and* agree to be paid over a five-year period of time through promissory notes and a license agreement? (SMF at ¶¶ 37-45). To do so would seem to be setting itself up to not get paid on the back end. "'[W]here a claim is one that simply makes no economic sense, [a plaintiff] must come forward with more persuasive evidence to support their claim than would otherwise be necessary.'" Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 226 (S.D.N.Y. 2007), S.C., 354 F. App'x 496 (2d Cir. 2009) quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

As argued in Medea's Main Brief, the claim that Medea misrepresented the genuineness of the purchase orders specified in paragraphs 12 and 18 of the Complaint cannot stand up to the clear and convincing evidentiary standard. Because CRG has not come forward with "clear, direct and weighty" evidence from which a "rational finder of fact" could conclude that Medea misrepresented purchase orders as bona fide (when they were not), summary judgment should be granted to Medea and CRG's fraud claim dismissed.[5]

---

[5] Quoting from Cruzan by Cruzan v. Director, Mo. Dep't. of Health, 497 U.S. 261, 285 n. 11 (1990), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

4

<u>Argument</u>

I. THE COURT SHOULD CONSIDER THE MISREPRESENTATIONS ALLEGED IN THE <u>COMPLAINT AND NOT A NEW ALLEGATION ABOUT MARKET DEMAND</u>

"The fundamental purpose of our pleadings rules is to protect a defendant's 'inalienable right to know in advance the nature of the cause of action being asserted against him.'" <u>Ruiz Rivera v. Pfizer Pharm., LLC</u>, 521 F.3d 76, 84 (1st Cir. 2008) quoting <u>Rodriguez v. Doral Mortgage Corp.</u>, 57 F.3d 1168, 1171 (1st Cir. 1995). This right is one of the reasons why fraud must be pled with particularity; one of the main purposes of Fed. R. Civ. P. 9(b) is "to put defendant[] on notice" of the claims against it so that the defendant can prepare an adequate and meaningful answer and defense.[6] <u>4 MVR, LLC vs. Warren W. Hill Const. Co.</u>, D. Mass., No. CIV.A. 12-10674-DJC, 2013 WL 310290, *4 (Jan. 25, 2013); <u>see also</u> § 62:133. Purpose Of Requirement That Fraud Or Mistake Be Pleaded With Particularity, 27 Fed. Proc., L. Ed. § 62:133. The First Circuit is strict in its application of the particularity requirements of Rule 9(b), because "[e]ach individual defendant is entitled to notice of the particulars of the fraudulent acts it is alleged to have committed." <u>Iron Mountain Inc. vs. Carr</u>, D. Mass., No. CIV.A. 05-10890-RCL, 2006 WL 6602266 *8 (D. Mass. Mar. 13, 2006) (internal quotation omitted).

Allegations that do not meet the requirements of Rule 9(b) should not survive a motion for summary judgment. For example, Judge Gorton granted summary judgment on a fraud

---

[6] The other two purposes of Rule 9(b) are "to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition;" and "to safeguard defendants from frivolous charges that might damage their reputations." <u>Id.</u> (internal quotations omitted); <u>see also</u> <u>Khelfaoui vs. Lowell Sch. Comm.</u>, D. Mass., No. 19-CV-11861-DLC, __F.3d__, 2020 WL 6162945, *3 (Oct. 21, 2020). Here, CRG has used these claims to not only go on an extensive fishing expedition, but Medea has been subject to adverse publicity as a result of CRG's fraud claim.

claim that was not stated with the specificity required under Rule 9(b). Health Plans, Inc. v. New York Life Ins. Co., 898 F. Supp. 941, 948-49 (D. Mass. 1995). In that case, plaintiff attempted to explicate its fraud claim in its opposition to a motion for summary judgment. Just as a "[c]ourt cannot address claims not pled in the complaint on a summary judgment motion" it is too late for CRG to bring in new, broader allegations of fraud through its opposition. See Heejoon Chung v. U.S. Bank, N.A. 250 F. Supp.3d 658, 687 (D. HI 2017) (refusing to address claims based on allegations not pled in the complaint); cf. Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir. 1990) (stating that "summary judgment is not a procedural second chance to flesh out inadequate pleadings). More to the point, CRG's broad allegations of misrepresenting "market demand" do not meet the pleading requirements of Rule 9(b) because CRG does not specify "the time, place, and content" *of the alleged false statements made by Medea* as required under Rule 9(b).[7] See Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985).

Without any attempt to amend its complaint, CRG references testimony of non-party witnesses and certain documents in its opposition to Medea's motion for summary judgment that it claims support an inference that Medea made statements misrepresenting the market demand for the vodka to CRG. This shift in focus should not be allowed. Where a scheduling order was in place and has been adhered to and where a party has timely moved for summary judgment, a plaintiff should not be allowed to belatedly change the allegations and the focus of the defense through, for example, a motion to amend the complaint. Steir v.

---

[7] Moreover, an opinion about what the future will hold is not actionable where the maker has no superior knowledge of what the future will hold as both the Keating and Zimmerman cases cited by CRG on page 16 of its Opposition make clear. In both cases, the defendant had superior knowledge and knew that its opinion or statement was false. See Keating v. Pappalardo, 74 Mass. App. Ct. 1102, 2009 WL 886888 (2009) and Zimmerman v. Kent 31 Mass. App. Ct. 72 (1991).

Girl Scouts of the USA, 383 F.3d, 7, 12 (1st Cir. 2004) (stating that "a plaintiff is required to show substantial and convincing evidence to justify a belated attempt to amend a complaint" after a motion for summary judgment is filed) (internal quotation omitted).  Accordingly, this Court's focus should remain on what was pled in the Complaint and not what is claimed in an Opposition brief.

## II.     THE CHOICE OF LAW ANALYSIS DOES NOT RESULT IN THE APPLICATION OF MASSACHUSETTS LAW

The parties agree that this Court should apply Massachusetts choice of law principles because this is a diversity action.  The analytical process for doing so is straightforward.  First, the Court determines if there is a difference between Massachusetts law and the other potentially applicable state laws.[8]  Levin v. Dalva Brothers, Inc., 459 F.3d 68, 73 (1st Cir. 2006).  If there are differences, the court should engage in a choice-of law-analysis.  Id.

According to the Supreme Judicial Court, this Court should weigh factors listed in the Restatement against other factors such as:  the needs of the state systems; relevant policies of the forum and of other interested states; protection of justified expectations; certainty and predictability; and ease in determination, application of law, and simplifying the judicial task.[9]  Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 630-636 (1985).  Since this

---

[8] CRG seems to suggest that it can choose which state's law applies by choosing the forum for suit when it claims on page 13, n. 4, of its Opposition Brief that "[n]o party seeks application of California, Delaware, or New Jersey law."  However, when a court is required to engage in a choice-of-law analysis, it needs to consider all the state laws that might be applicable.  See Levin v. Dalva Brothers, Inc. 459 F.3d 68, 73 (1st Cir. 2006).

[9] Section 148(2), Fraud and Misrepresentation, of the Restatement (Second) Conflict of Laws, looks to the contacts the parties have with the applicable states to determine which state "has the most significant relationship to the occurrence and the parties."  These contacts include:  a) the place (or places) where the plaintiff acted in reliance on the representations; b) where the plaintiff received the representations; c) where the defendant made the representations; d) the principal place of business or state of incorporation of the parties; e) where a tangible thing which is the subject of the transaction between the parties was situated at the time; and f) where plaintiff was to render performance under the contract.

analysis is meant to be a functional test, the SJC cautions against totaling up the Restatement factors. Id. at 633.  Instead, a court should actively weigh them against the policy factors and "'borrow from any of the various lists to help focus…attention on considerations particularly relevant to the case…'"  Millipore Corp. v. Travelers Indemn. Co., 115 F.3d 21, 30 (1st Cir. 1997) quoting Bushkin Assocs., Inc., 393 Mass. at 634.

What makes this case different from most cases (and from the cases cited by CRG) is that neither CRG nor Medea are located in Massachusetts.[10]  Medea argued in its main brief that New York law should apply, not because the Court is *required* to apply New York law to the fraud claim under the contractual choice of law provisions in the Participation Agreements (since Medea is not a party to those Agreements) as CRG suggests; but because New York law should apply under Bushkin - especially because CRG stated that it *wanted* New York law to apply to the transaction as Brosnan testified.  (Medea SJ Ex. 33, Brosnan Dep. at 32).  Brosnan sought the application of New York law because "there has been [New York] case law that would guide us if there was a dispute".  (Id.)

Two Diamond also agreed that New York law should apply to the Participation Agreements so that the justified expectations of the parties were that New York law should

---

[10] In Computer Sales Intern., Inc. v. Lycos, Inc., 2006 WL 1896192 at *1 (D. Mass. 2006), defendant was located in Massachusetts and the court reviewed whether a claim for fraudulent inducement fell within the scope of a contractual choice of law provision requiring Massachusetts law to apply.  The case did not apply the Bushkin analysis as required in our case. In Kitner v. CTW Transport, Inc., 53 Mass. App. Ct. 741, 745 (2002), both plaintiff and defendant were located in Massachusetts and the court considered whether a G.L. c. 93A claim was barred because a contract contained a choice-of-law provision requiring North Dakota law to apply.  In Laboeuf v. Bigliazzi, No. 000048B, 2001 WL 881469, at *7 (Mass. Super. 2001), plaintiff and one of the defendants were located in Massachusetts and the Superior Court found that the tort claims fell outside the language of the contract's choice-of-law provision.  Finally, in First Sec. Bank, N.A. v. Northwest Airlines, Inc., No. 95-12103, 2001 WL 92175, at *3 & n.8 (D. Mass. 2001), the court found that tort claims were not within the scope of the contract's choice-of-law provision designating Minnesota law and that the c. 93A claim was barred because acts occurred primarily and substantially in Minnesota.

8

apply. Medea is content to apply New York law. Applying New York law not only simplifies the judicial task but is consistent with the certainty and predictability that both CRG and Two Diamond sought. When the fact that Medea agrees to New York law is added to this analysis, that should fairly end the inquiry. See Bushkin Assocs., Inc., 393 Mass. at 630-634.

However, even if the Court overlays the factors set forth in § 148(2) of the Restatement (Second) on top of the policy factors outlined in Bushkin, what is plain is that Massachusetts law is *least* likely to apply. Medea is based in California and incorporated in Delaware. (SMF at ¶ 15). The Complaint alleges that Medea misrepresented the bona fides of purchase orders to Cabael. Those statements emanated from California to where-ever Cabael was located when he received them (California or the Philippines). Cabael, in turn, through Bevriqo (a Delaware corporation), contacted Gary Carpenter of Haddonfield Asset Management (based in New Jersey).[11] (SMF at ¶¶ 17, 54). Carpenter contacted Kot (who was located in Connecticut). Kot, in turn, contacted Brosnan. Brosnan is employed as a trader for CRG by DRB Capital LLC (a Delaware LLC). CRG (a Delaware LLC) is located in New Jersey. CRG and DRB Capital LLC are ultimately owned by the Blackstone Group, Inc., whose headquarters are in New York). (SMF at ¶¶ 2, 4-8, 13, 54). Finally, inventory that secured the Participation Agreements was located in a warehouse in New Jersey. (SMF at ¶ 46).

What is plain is that under no analysis does Massachusetts law apply to the fraud claim between CRG and Medea.[12] The alleged representations were not made by Medea to

---

[11] It is true that Cabael met with Two Diamond's principals in Massachusetts on March 31, 2017, but that was *after* information regarding the weak demand for Medea vodka was transmitted from Medea to Cabael on March 14, 2017, and *after* the alleged misrepresentations regarding purchase orders occurred. (SMF at ¶¶ 59, 164).

[12] Using the Restatement factors, one could argue that - other than New York - the next logical choice is to apply New Jersey law. However, in a recent case, a federal district court in

anyone in Massachusetts, and CRG did not rely on the representations in Massachusetts. Indeed, for purposes of this motion, Massachusetts has no particular interest in or connection to CRG's claim of fraud against Medea, and New York, not Massachusetts, law should apply.

### III. THERE IS NO CLEAR AND CONVINCING EVIDENCE OF A MATERIAL MISREPRESENTATION BY MEDEA

There can be no dispute that under New York law fraud must be proven by clear and convincing evidence. Integrated Construction Enterprises, Inc. 2020 WL 614991 at *4-5, n.5 and n.7 (collecting cases from both New York and New Jersey). The clear and convincing evidentiary standard as stated by New York Courts is set forth in Medea's Main Brief on page 12. The Supreme Court has noted that this is evidence that is "so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Cruzan by Cruzan v. Director, Mo. Dep't. of Health, 497 U.S. 261, 285 n. 11 (1990). Clear and convincing evidence does not include evidence that is of insufficient caliber or quantity.[13] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

---

New York analyzed whether there was a conflict between New York and New Jersey law on a claim for fraudulently inducing a contract and a claim based on misrepresentations made during the performance of a contract and applied New York. Integrated Constr. Enterprises, Inc. vs. GN Erectors, Inc., S.D.N.Y., No. 16 CIV. 5561, WL 614991, *4-5 (PAE) (Feb. 10, 2020). (concluding that there is no "actual conflict between New York and New Jersey law as pertinent to these theories of fraud" and applied New York law).

[13] Nor does it include statements that are "patently inadmissible at trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). "It is black-letter law that hearsay evidence cannot be considered on summary judgment." Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 17 (1st Cir. 2007). Here, that is precisely what CRG attempts to do. For example, on pages 8 and 9 of its Opposition CRG states that "Duggans Distillers told Cabael that the orders had been 'cancelled' and that Medea never sold any vodka into Costco Northeast." This is classic hearsay – an out of court statement offered for the truth of the matter asserted. Fed. R. Evid. 801 and 802. And, of course, Medea did not prepare the Duggans purchase orders.

10

Indeed, there does not appear to be clear and convincing evidence that CRG even considered the purchase orders – i.e., the focus of the claim against Medea - to be material to its loan decision.[14] "New York law defines materiality 'to mean that, counterfactually, the plaintiff would have acted differently but for the alleged misrepresentation or omission.'" Fed. Deposit Ins. Corp. vs. Murex LLC, S.D.N.Y., No. 16 CIV. 7703 (PAE). __ F.3d __, 2020 WL 6646159, *24 (Nov. 12, 2020) quoting City Trading Fund v. Nye, 59 Misc.3d 477, 72 N.Y.S.3d 371, 378 (Sup. Ct. 2018) (collecting cases).  In determining whether to provide $1.3 million in funding, CRG states that it reviewed the inventory appraisal of the vodka located in New Jersey (which CRG also physically inspected).  (SMF ¶¶ 80, 109).  According to the inventory appraisal, the liquidation value of the vodka was between $1.9 million to $2.2 million.  (SMF ¶ 83).  CRG also notes that if even if just 30% of the inventory is sold, that is "well within our comfort zone."  (Medea SJ, Ex. 14, Brosnan Memo at CRG00353).

CRG admits that it made no effort to verify purchases orders and Brosnan acknowledged that Bevriqo would not be buying receivables since no purchase orders had been fulfilled.  (SMF ¶ 81; SJ Ex. 33, Brosnan Dep. at 267-68).   Given CRG's focus on inventory and its lack of focus on purchase orders, there is no clear and convincing evidence that CRG viewed the alleged misrepresentations as material (if they were, wouldn't CRG have attempted to verify them?).  That is, there is no clear and convincing evidence that CRG would have acted differently but for the alleged misrepresentation.[15]

---

[14] "Under Massachusetts law, 'materiality' is defined as whether 'a reasonable man would attach importance [to the statement] in determining his choice of action in the transaction in question." Metro. Prop. & Cas. Ins. Co. v. Savin Hill Family Chiropractic, Inc., 266 F. Supp. 3d 502, 538 (D. Mass. 2017) quoting Zimmerman v. Kent, 31 Mass.App.Ct. 72, 78 (1991) (internal quotations omitted).

[15] In fact, it is not surprising that it did not consider the purchase orders to be important enough to the transaction to verify since CRG knew that the total of all the purchase orders that it alleges in paragraph 12 of the Complaint is just $837,469.76 far less than the $1.3

## IV. CRG'S RELIANCE WAS NOT JUSTIFIED

CRG makes two arguments in an attempt to show that its reliance was justified.[16] First, even though it is a specialty finance company, CRG claims that it was unsophisticated in asset-based lending. (SMF at ¶ 11, CRG Opp. at 22). This is somewhat like arguing that Einstein was unsophisticated in mathematics because his focus was on theoretical physics. CRG's business is to provide liquidity to creditors in bankruptcy, and to provide loans and liquidity on other nonliquid assets. (SMF at ¶ 11). CRG represented to Two Diamond that it had made thousands of investments since 2009, that CRG's parent, DRB, had a $100,000,000 balance sheet, and that it was owned by Blackstone.[17] (Medea SJ Ex. 33, Brosnan Dep., at 19, 26-27). CRG also engaged in asset-based lending in the past. (Id. at 27). If CRG was unsophisticated in Asset Based Lending, then it had no business making a $1.3 million loan based on assets.

CRG's second argument that its reliance was justified, is simply a "dog ate my homework" story as to why it did not conduct due diligence. (CRG Opp. at 23-26). CRG does not seem to dispute that under New York law it had an obligation to investigate those facts

---

million that it loaned and far less than the appraised value of the inventory located in New Jersey.

[16] As set forth in Medea's Main Brief at pages 21-23, The law is clear that CRG's purported reliance on misrepresentations Medea allegedly made, not to CRG, but to Cabael (and supposedly communicated by Cabael or Carpenter to Gochis at Two Diamond, then from Gochis to Kot at Two Diamond, then from Kot to Brosnan at CRG, and finally from Brosnan to Axenrod at CRG) was unreasonable given the admitted lack of CRG due diligence.

[17] Brosnan, for example, is plainly sophisticated in the areas of lending and risk: he had a decades long career in banking working for such institutions as Credit Suisse, Royal Bank of Scotland, and Guggenheim Securities, is a Columbia Law School graduate, holds a CFA (Certified Financial Analyst) license, and spent years as a corporate associate at White & Case, a national law firm headquartered in New York. (Medea SJ Ex. 33, Brosnan Dep., at 21-25).

that were not exclusively within Medea's knowledge. See <u>MP Cool Investments Ltd. v. Forkosh</u>, 142 A.D. 3d 286, 291 (2016). Nor does it seem to dispute that Brosnan and Axenrod had an obligation to make use of their intelligence to investigate the truth of facts not within Medea's control.[18] <u>Danann Realty Corp. v. Harris</u>, 5 NY2d 317 (1959). In explaining why CRG made no effort to verify purchase orders, CRG blamed Two Diamond for not doing so. (SMF ¶ 81). Rather than "vet" their borrower Bevriqo/Cabael, CRG simply accepted Bevriqo/Cabael's bona fides without further investigating the materially false financial statement handed to Two Diamond by Cabael. (SMF ¶¶ 88-94). Finally, the claim on page 27 of CRG's Opposition Brief that Two Diamond was told by Medea not to contact Medea's customers or distributors and Two Diamond in turn relayed that information to CRG, simply does not hold water. Both Two Diamond representatives, Kot and Gochis, testified they had no communications with Medea. (SM ¶ 97). Medea did not tell Two Diamond to refrain from contacting customers or distributors because Medea and Two Diamond never communicated.[19] More to the point, Medea gave Cabael all the information necessary to contact buyers and told Cabael that he could talk to them. (Medea SJ, Ex. 35, Laidlaw Dep. at 365). Why would Medea provide that information and then say, "don't use it"? Here, the clear and convincing evidence is that CRG's reliance was woefully *unjustified.*

---

[18] Under New Jersey law for reliance to be justified, there must be actual reliance. <u>Walid v. Yolanda for Irene Couture, Inc.</u>, 425 N.J. Super. 171, 181 (App. Div. 2012). And under Massachusetts law there is no justifiable reliance on predictions or forecasts (which is what the alleged purchase orders were). See <u>In re Access Cardio Systems, Inc.</u>, 404 B.R. 593, 649 (Bankr. D. Mass. 2009).

[19] There not a single contemporaneous writing corroborating Brosnan's testimony, and Brosnan's testimony would be inadmissible hearsay. Fed. R. Evid. 801 and 802.

13

## V. CRG'S DAMAGES WERE NOT CAUSED BY ALLEGED CONDUCT OF MEDEA

CRG seems to concede that its losses must be causally related to the alleged misrepresentations. Loss causation is the fundamental core of the common-law concept of proximate cause:

> "An essential element of the plaintiff's cause of action for negligence or for ... any ... tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." Prosser and Keaton, Torts, § 41 at pg. 263 (5th ed.).

Laub v. Faessel, 297 A.D.2d 28, 31, 745 N.Y.S.2d 534, 536 (2002) (finding that misrepresentations about defendants' competencies and expertise did not proximately cause plaintiff's investment losses).[20] CRG contends that Medea misconstrued Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993), to make an argument that Medea does not make; i.e. "that unless Medea was the only and only one causal factor at work CRG's recovery is barred." (CRG Opp. at 28). What Medea has argued is that as to the fraud claim against it (as opposed to the fraud claim against Two Diamond, for example), CRG's loss must be a direct and proximate result of Medea's conduct. CRG uses an unpublished district court decision, BMS Cat, Inc. v. Klemmt Orthotics & Prosthetics, Inc., to explain what the Second Circuit stated in Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993). (CRG

---

[20] On page 29 of its Opposition, CRG also cites Kirbatic Seafood v. Dechert, 478 Mass. 111 (2007). However, Kirbatic is readily distinguishable and inapplicable because it discusses proximate cause in the context of liability for attorney malpractice, not damages for fraud. Idress v. American University, 546 F. Supp. 1342 (SDNY, 1982) (CRG Opp. at 29) is entirely consistent with Medea's authorities. Idress holds that (i) fraud must be proven by clear and convincing evidence (546 F.Supp. at 1346); and (ii) damages must be the direct result of Medea's fraud and must be independent of other causes. 546 F. Supp. at 1350. Accord: Bennett v. U.S. Trust, 770 F.2d 300 (2nd Cir., 1985) (CRG Opp. at 29). Lastly, CRG cites Stolzoff v. Waste Systems, 58 Mass. App. Ct. 747 (2003) (CRG Opp. at 29). Stolzoff however applies the same legal principles Medea has argued here: CRG could not reasonably rely on oral representations directly contradicted by risk disclosures in the Participation Memo and the Branford Appraisal and statement on which liability for fraud is predicated must be one of fact, not opinion, future conditions, "puffery" or be matters promissory in nature.

Opp. at 28). While it is true that the District Court in BMS Cat stated that the damages in a fraud case must be distinct and "independent of other causes" of action, such as a contract action, so too did Kregos. Compare Kregos, 3 F.3d at 665, with BMS Cat, Inc. v. Klemmt Orthotics & Prosthetics, Inc., 2014 WL 12675265, *5 (N.D.N.Y. Jan. 28, 2014). Both cases also noted that the damages "must be the direct, immediate and proximate result of the misrepresentation" and must be independent of other causes to sustain a fraud claim. Kregos, 3 F.3d at 665, BMS Cat, 2014 WL 12675265 at *5.

Here, CRG appears to concede that its losses do not stem from the specific purchase orders as alleged in the Complaint when it states on page 29 that its losses stem from "misrepresentations about the overall demand for Medea vodka." But even assuming that CRG still contends that the purchase orders are not bona fide, there is no clear and convincing evidence that CRG's losses were the direct and proximate result of any statement by Medea in light of the: false statements conveyed by Cabael; the apparent over-valuation of the inventory by Branford; the lack of due diligence into Cabael/Bevriqo; and CRG's reliance on Two Diamond to conduct due diligence.

In short, both Medea and CRG relied upon Cabael. Both Medea and CRG lost money and the cause of CRG's and Medea's losses is the fraud Cabael perpetrated on both companies. There is no clear and convincing evidence that Medea made any material misstatement of fact that CRG either justifiably relied upon or that caused CRG's losses. Accordingly, CRG's fraud claim against Medea should be dismissed.

Dated: April 8, 2021

Respectfully submitted,
Medea, Inc.
By its attorneys,

/s/ Philip Y. Brown

Philip Y. Brown (BBO #552366)
Amelia R. Gray (BBO #675632)
Brown Counsel
175 Federal Street, Suite 1440
Boston, MA 02110
617-842-8375
pbrown@browncounsel.com
agray@browncounsel.com


/s/ Jules A. Epstein

Jules A. Epstein (*admitted pro hac vice*)
Jules A. Epstein, P.C.
100 Jericho Quad., Ste 300
Jericho, NY 11753
(516) 745-1325
jaepc1@aol.com / jaepc2@aol.com

## Certificate of Service

I do hereby certify that this document filed through the ECF system will be served electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be served by first class mail postage prepaid, to those indicated as non-registered participants on April 8, 2021.

/s/ Philip Y. Brown

Philip Y. Brown