**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **CRG FINANCIAL, LLC and CLAIMS RECOVERY GROUP, LLC,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | **No. 19-cv-10182-DJC** |
| **v.** | ) ) ) ) | |
| **TWO DIAMOND CAPITAL CORP. and MEDEA, INC.,** | ) ) ) ) | |
| **Defendants.** | ) ) ) ) ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                     **June 16, 2021**

## I.     Introduction

This case arises out of a series of agreements to fund the purchase and sale of Medea Vodka.  D. 1.  Plaintiffs CRG Financial, LLC ("CRG") and Claims Recovery Group, LLC ("Claims Recovery") (collectively, "Plaintiffs") have filed this lawsuit against Defendants Two Diamond Capital Corp. ("Two Diamond") and Medea, Inc. ("Medea") in connection with the loan facility and related agreements.  D. 1.  Medea has moved for summary judgment on the single count against it for fraud (Count III).  D. 126.  For the reasons stated below, the Court ALLOWS the motion.

1

## II.      Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010).  The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.     Factual Background

The following summary of material facts is taken from Medea's statement of material facts, D. 128 as well as CRG's response to same, D. 133, and are undisputed unless otherwise noted.

Medea is in the business of manufacturing and distributing Medea Vodka.  D. 128 & 133 at ¶¶ 15, 19; D. 127 at 8.  Brandon Laidlaw ("Laidlaw") is Medea's CEO.  D. 128 & D. 133 at ¶ 16.  In 2016, Medea decided to spin off its vodka inventory and focus on licensing the proprietary electronic messaging technology on its bottles.  D. 128 & D. 133 at ¶¶ 19-20, 25.  Non-party Bevriqo, Inc. ("Bevriqo") is in the vodka business and is headed by Richard Cabael

("Cabael").  Id. at ¶¶ 17-18.  Laidlaw and Cabael were in touch about Bevriqo purchasing Medea Vodka.  Id. at ¶ 26.  Plaintiff CRG provided liquidity to bankruptcy creditors and loans on distressed assets.  Id. at ¶ 11.  Joseph Brosnan ("Brosnan") was employed by DRB Capital LLC as a trader for CRG.  Id. at ¶ 8.  Robert Axenrod ("Axenrod") is the CEO of CRG and the managing member of Claims Recovery.  Id. at ¶ 10.   Two Diamond is in the business of providing asset-based lending accounts receivable financing and other specialty loans.  Id. at ¶¶ 12, 14.  Michael Kot ("Kot") and George Gochis ("Gochis") are Two Diamond's principals.  Id. at ¶ 13.

As explained in further detail below, there were several transactions involved in the funding and purchase of Medea Vodka inventory.   The purchase and sale portion of the underlying transaction was executed in the Second Amended Inventory Purchase and Licensing Agreement (the "Asset Agreement") signed by Medea and Bevriqo on April 14, 2017.  Id. at ¶ 39; D. 126-5.  On April 11, 2017, Two Diamond loaned money to Bevriqo, pursuant to the Loan and Security Agreement, to acquire the Medea Vodka inventory.  D. 128 & D. 133 at ¶ 62. Plaintiffs and Two Diamond entered into participation agreements to provide such financing so that Bevriqo could purchase the Medea Vodka.  Id. ¶¶ 67-70.  Specifically, on April 13, 2017, CRG executed a participation agreements for $800,000 to invest in the inventory loan.  Id. at ¶ 67.  Claims Recovery did the same on the same day for an investment of $500,000.  Id. at ¶ 68. On April 17, 2017, CRG wired these funds to Two Diamond and Two Diamond then wired $1,500,000 to Medea towards Bevriqo's purchase.  Id. at ¶ 45.

Since the sole claim against Medea is one for fraud, based upon the alleged misrepresentations that Medea made regarding "the existence of bona fide purchase orders" for

Medea Vodka in the formation of the contracts under which Bevriqo later defaulted,  D. 1 (verified complaint) ¶ 54, the Court focuses on this matter in the summary below.

      **A.**   **Prior to Execution of the Asset Agreement**

On April 12, 2017, prior to the execution of the Asset Agreement (or the other agreements), Medea provided copies of its distribution agreements with Allstar Global, LLC ("Allstar"), Youngs Market and Duggans Distillers ("Duggans") and Herman Jensen Agreement to Bevriqo. D. 128 & 133 at ¶ 123; D. 126-32 at 164.  Medea provided copies of purchase orders for Medea Vodka issued by third party liquor distributors, including Allstar to Cabael.  D. 128 & D. 133 at ¶ 126.  Gary Carpenter ("Carpenter"), an advisor engaged by Cabael to assist him in getting financing for his Medea Vodka transaction,  forwarded copies of several purchase orders issued by distributors for Medea Vodka to Two Diamond, who forwarded the communication to Brosnan.  Id. at ¶¶ 55, 127.  Stevens, principal of Allstar, represented to Cabael and Medea that, among other things, he sought to extend its exclusive distribution agreement with Medea for distribution in Latin America from three years, dated December 9, 2016, to ninety-nine years.  Id. at ¶¶ 139, 141.  This agreement required Allstar to purchase 17,500 cases of Medea Vodka annually for a three-year term for distribution in Latin America.  Id. at ¶ 142.  Allstar had the contractual right to terminate this agreement on thirty days written notice.  Id. at ¶ 143.  Allstar paid Medea $224,000 for its purchase of Medea Vodka under purchase order #1001.  Id. at ¶ 147.  Cabael or Carpenter informed Two Diamond that Allstar had made this payment.  Id. at ¶ 148.  Medea later assigned Purchase Orders ## 1002 and 1003 from Allstar to Bevriqo.  Id. at ¶ 149.

Also prior to the execution of the Asset Agreement, Medea provided its financial records to Cabael.  Id. at ¶ 164; D. 126-24; D. 126-32 at 722-23.  This transmittal included sales

forecasts, accounts receivable and new purchase order information reporting sales of 1147 cases for $229,800 from January 1, 2017.  D. 128 & 133 at ¶ 181; D. 126-24.     Medea informed Cabael that Medea Vodka was losing money and Cabael informed Two Diamond that Medea was losing money.  D. 128 & 133 at ¶ 165-166.  The projections provided by Carpenter to Two Diamond on March 20, 2017, D. 126-28, the sales projections Two Diamond provided in the Participation Memorandum regarding the "Medea Vodka Opportunity," D. 1-5, and sales projections provided in the Two Diamond "Participation Opportunity," D. 1-7, are different than the projections that Medea provided to Cabael on March 14, 2017.  D. 128 & 133 at ¶ 183. Cabael made up his own sales projections utilizing his own "growth formula" that he provided to Two Diamond.  Id. at ¶ 184.

**B.    The Underlying Medea and Bevriqo Transaction**

Medea was engaged in the manufacture and distribution of Medea Vodka.  Id. at ¶ 19. For the first three quarters of 2016, Medea's Vodka sales trended negatively.  D. 133 at ¶ 24.  In 2016, Medea decided to sell its vodka inventory.  Id. at ¶ 25.

On April 14, 2017, Medea and Bevriqo executed the Asset Agreement.  Id. at ¶ 39.  The Asset Agreement provided for Bevriqo to pay Medea a total of $7,720,000, including (i) $2,720,000 to purchase an inventory of finished Medea Vodka products and components; and (ii) license fees for use of Medea's electronic messaging system in the sum of $1,000,000 per year for a term of five years.  Id. at ¶ 40.  Under the Asset Agreement, Bevriqo represented and warranted to Medea that, among other things, it had sufficient facilities, resources and personnel to market and sell Medea Vodka and perform its duties under the contract, that it  acknowledged and received no assurances that its business relationship with Medea would continue or that any investment would be recouped and that it was familiar with the laws of the territories which it

5

operated and released Medea from any claims in connection with vodka imports or exports.  Id. at ¶ 42.

### C.        Bevriqo Defaults on the Asset Agreement with Medea

The Asset Agreement required Bevriqo to make an initial payment of $1,500,000 towards its $2,720,000 vodka inventory purchase.  Id. at ¶ 44.   Bevriqo paid Medea this $1,500,000 on April 17, 2017.  Id. at ¶ 45.  On or about May 9, 2017, Bevriqo invoiced Allstar for its Purchase Orders ## 1002 and 1003.  Id. at ¶ 150.  Allstar did not take delivery or pay for the Medea Vodka for which it was invoiced by Bevriqo on May 9, 2017.  Id. at ¶ 151.

Bevriqo ultimately sold no Medea Vodka, generated no receivables and defaulted on its loan payment.  Id. at ¶ 50.  Bevriqo defaulted on payment of its $2,000,000 promissory note to secure payment of the first- and second-years' license fees and the balance of its payment to Medea for the vodka inventory.  Id. at ¶ 51.  Medea declared Bevriqo's default under the Asset Agreement on June 26, 2017.  Id. at ¶ 52; D. 126-7.

### D.        Bevriqo Defaults on the Loan and Security Agreement with Two Diamond

On April 11, 2017, Bevriqo, as a borrower, and Two Diamond, as a lender, entered into a Loan and Security Agreement in the principal sum of $2,000,000, pursuant to which Two Diamond funded the Inventory Loan.  Id. at ¶ 62.  Bevriqo delivered its $2,000,000 note payable to Two Diamond.  Id. at ¶ 63.  Cabael delivered his unconditional guarantee of Bevriqo's performance.  Id. at ¶ 64.  Bevriqo's obligations to Two Diamond were secured and collateralized by (i) the Medea Vodka inventory; and (ii) Cabael's guaranty.  Id. at ¶ 65. Plaintiffs agreed to invest $1,300,000 in the $1,500,000 Inventory Loan.  Id. at ¶ 66.  On April 13, 2017, CRG executed a participation agreement with Two Diamond to invest $800,000 in the Inventory Loan.  Id. at ¶ 67.   That same day, Claims Recovery executed a participation

agreement with Two Diamond to invest $500,000 in the Inventory Loan.  <u>Id.</u> at ¶ 68.  Bevriqo

failed to make any payments due to Two Diamond for the Inventory Loan.  <u>Id.</u> at ¶¶ 73, 74.

## IV.    Procedural History

On January 28, 2019, the Plaintiffs filed their complaint in this case.  D. 1.  The following

day, Plaintiffs moved for a temporary restraining order against Two Diamond.  D. 5.  On April 4,

2019, after a motion hearing, the Court denied Plaintiffs' motion.  D. 21.  Medea moved to

dismiss for lack of personal jurisdiction, D. 31, which the Court denied.  D. 92.  The Court has

now heard the parties on Medea's pending motion for summary judgment and took the matter

under advisement.  D. 143.

## V.    Discussion

### A.    <u>Choice of Law</u>

Medea contends that this Court should apply New York law to Plaintiffs' fraud claim.  To

determine which state's law applies to a particular case, Massachusetts courts employ the

"functional choice-of-law approach that responds to the interests of the parties, the States

involved, and the interstate system as a whole."  <u>Bushkin Assocs., Inc. v. Raytheon Co.</u>, 393

Mass. 622, 631 (1985) (citing the considerations under Restatement (Second) of Conflict of

Laws § 6 (1971)).  Medea argues that New York law should apply to the fraud claim as it was

the choice of law under the participation agreements between Plaintiffs and Two Diamond that

"[Plaintiffs] insisted should apply" and is also where the majority owner of CRG is located.  D.

127 at 16.  On the other hand, CRG argues that this argument must fail noting that Medea

"wrongly assume[s] that if New York law governed the participation agreements, it would [also]

govern CRG's claim of having been induced by false misrepresentations to sign" same.  D. 131

at 11.  Massachusetts courts "have repeatedly held that claims of fraudulent inducement do not

fall within the scope of contractual choice-of-law provisions" such as those within the participation agreements. Computer Sales Intern., Inc. v. Lycos, Inc., No. 05-10017, 2006 WL 1896192, at *1 (D. Mass. July 11, 2006) (citing Kitner v. CTW Transport, Inc., 53 Mass. App. Ct. 741, 744-45 (Mass. App. 2002); Laboeuf v. Bigliazzi, No. 000048B, 2001 WL 881469, at *7 (Mass. Super. Apr. 10, 2001)); see First Sec. Bank, N.A. v. Northwest Airlines, Inc., No. 95-cv-12103, 2001 WL 92175, at *3, n.8 (D. Mass. Jan. 3, 2001) (concluding under Massachusetts law that a contractual choice of law clause did not apply to a tort claim).

In addition, applying the functional approach, Massachusetts law should apply to the fraud claim here. Even by Medea's accounting, this action is pending in Massachusetts and Two Diamond, at the center of the related transactions is based here, D. 127 at 16. Moreover, any preference that Plaintiffs expressed for the application of New York law was only to the participation agreements to which Medea was not a party. D. 131 at 11. Moreover, considering the substantive interests of the forum, Massachusetts, there is an interest in applying Massachusetts law here, particularly given the differing burden of proof. Id. at 12. For all these reasons,, Massachusetts law shall be applied in analyzing the fraud claim, meaning that this Court will employ a preponderance of the evidence burden of proof, See Keating v. Pappalardo, 74 Mass. App. Ct. 1102, 2009 WL 886888, at *4 (2009) (affirming that burden of proof on fraud claims in Massachusetts is preponderance of the evidence as opposed to clear and convincing evidence standard), and not the clear and convincing evidence standard that would apply under New York law. D. 127 at 18 and cases cited. Given, however, that the Court concludes that Medea is entitled to summary judgment even subjecting Plaintiffs' claim to the preponderance of evidence standard, the outcome here would have been the same even if the Court had applied the (higher) clear and convincing standard under New York law.

**B.**     <u>Fraud</u>

In Count III of the verified complaint, CRG asserts that Medea "knowingly and materially misrepresented the existence of bona fide purchase orders," as a means to "induce the CRG Parties to fund Bevriqo's purchase."  D. 1 ¶ 54.  They further assert that Medea knew its representations were false and that Plaintiffs relied upon same in entering into participation agreements with Two Diamond.  <u>Id.</u> at ¶¶ 55-57.  The only purchase orders referenced in the complaint include specific purchase orders from Duggan Distillers, Allstar, Young's Market Company and Breakthru Beverage Nevada LLC, <u>id.</u> at ¶ 12, and the complaint also references Two Diamond's statement in the Participation Memorandum to Plaintiffs that Medea had secured purchase orders for sales to Kroger and Costco.  <u>Id.</u> at ¶ 18.

Complaints alleging fraud must also "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), requiring Plaintiffs to allege "the time, place and content," of the false representations giving rise to the claim for fraud.  <u>Dickey v. U.S. Bank Trust N.A.</u>, No. 19-cv-12504, 2020 WL 4474273, at *4 (D. Mass. Aug. 3, 2020); <u>see</u> <u>Epstein v. C.R. Bard, Inc.</u>, 460 F.3d 183, 190-91 (1st Cir. 2006).  To prevail on a claim for fraud, Plaintiffs must show:  (1) Medea made a false representation of a material fact (2) with knowledge of its falsity (3) for the purpose of inducing them to act thereon and (4) they relied on the representation as true and (5) acted upon it to their damage.  <u>See</u> <u>Dickey</u>, 2020 WL 4474273, at *4 (internal quotation marks and citations omitted).

Medea is entitled to summary judgment where CRG, has failed to show on this undisputed record of material facts, that Medea made any false representation of material fact, the first element of any fraud claim.  As to Two Diamond's representation in the Participation Memorandum that Medea had secured purchase orders for sales to Kroger (3900 store chains)

and Costco (2900 store chain), there is no evidence in the record that Medea made such representations.  In fact, Medea's own forecast of sales to Kroger and Costco, reflected in the March 14, 2017 email to Cabael, predicted not a national, thousand-store rollouts, but sales of (estimated) 10,000 cases to Kroger in a year and (estimated) 672 cases to Costco NE.  D. 126-24 at 3.  There is no suggestion in the record that Medea made the representation contained in the Participation Memorandum.  D. 127 at 20-21.

As to the purchase orders referenced in the complaint, there is no evidence in the record that these purchase orders were not bona fide or that Medea made any misrepresentation about them to Plaintiffs.  As pled, Plaintiffs base their fraud claim on Medea's alleged misrepresentation of the authenticity of the three orders from Duggan from February 16, 2017 (for $37,968, $50,624, and $37,968, respectively), two orders from Allstar Brands from March 15, 2017 and March 23, 2017 (for $448,627.60 and $224,313.60, respectively), an order from Young's Market Company from March 6, 2017 in the amount of $25,312 and an order from Breakthru Beverage Nevada LLC from March 23, 2017 for $12,656.56.  D. 1 at ¶¶ 12.  Plaintiffs plead that these representations "originated from Medea," and that Medea knew same to be false. Id. at ¶ 14.  "[M]ere allegations of fraud . . . are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated."  Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985).

Now on a fully developed record, Plaintiffs have not marshaled evidence of their fraud allegations as to these purchase orders.  There is perhaps the most in the record about the Allstar purchase orders since Allstar performed on the first purchase order to Medea, but then failed to do so on the latter two purchase orders in March 2017 that were assigned to Bevriqo when it invoiced Allstar on May 9, 2017 for them.  Even as to the Allstar purchase orders, however,

there is no evidence that Medea made any representations, much less misrepresentations, to Plaintiffs about them or regarding Allstar's ability to execute on them.  Much of Plaintiffs' opposition focuses on alleged misrepresentations that Medea made to Cabael regarding the invoices, but even assuming that those were misrepresentations, there is no record evidence that Medea made such representations to Plaintiffs.  Moreover, whatever statements that Medea made Cabael, the record is clear that Cabael made different and more optimistic representations to Two Diamond.[1]  D. 139 at 2 (chart contrasting Medea's forecasts to Cabael with those Cabael provided to Two Diamond).[2]  Accordingly,  this Court concludes that the fraud claim fails for lack of evidence of any material misrepresentations about the purchase orders by Medea to Plaintiffs.

Having reached this conclusion as ot the lack of false representation of a material fact by Medea to Plaintiffs (and failure to show any such representation caused damage to Plaintiffs), the Court need not reach Medea's further arguments that Plaintiffs' claim also fails for failure to

---

[1] For this reason as well, Plaintiffs have failed to show, that any of Medea's alleged representations (assuming *arguendo* that they had shown actionable misrepresentations here) as opposed to representations by others, caused Plaintiff's damages.  See Sparks v. Fidelity Nat. Title Ins. Co., 294 F.3d 259, 272 (1st Cir. 2002) (agreeing that even "assuming for purposes of the summary judgment motion that the defendants had misrepresented the extent of their ownership of property in the subdivision, [plaintiff] could not prove that the deception was the cause of any injury or damage to him).

[2] Plaintiffs' reliance on Koch v. Greenberg, 14 F. Supp. 3d 247, 257-58 (S.D.N.Y. 2014) does not warrant a different outcome here.  There, the Court noted that "under New York law, while a plaintiff may not generally claim reliance on statements made by third parties, so long as plaintiff is among the 'class of persons' intended to rely on the statement, . . . , it is unnecessary that such 'representations should be made to the plaintiff directly.'"  Id. (internal citations omitted).  Even assuming *arguendo* New York law applies, Koch is distinguishable because the defendant there "was a driving force behind the . . . representations" made to the class of persons intended to rely on the statement.  Id. at 258.  The same cannot be said of Medea on the now developed record, particularly when Cabael and his agents were making representations to Two Diamond.

satisfy the other requisite elements.  <u>In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab.</u>
<u>Litig.</u>, 76 F. Supp. 3d 279, 292 (D. Mass. 2019) (noting that "[a] plaintiff's failure to establish
any one of the essential elements of fraud is fatal to recovery") (internal quotation marks and
citation omitted).[3]

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Medea's motion for summary judgment,
D. 126.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[3]In their opposition, Plaintiffs address the allegations of fraud concerning
misrepresentation of the existence of bona fide purchase orders, but now claim more broadly that
the fraud claim arises from "Medea knowingly made false representations about market demand,
including without limitation representations concerning certain purchase orders for the [Medea
Vodka]."  D. 131 at 2.  Such allegations do not save Plaintiffs' claim against Medea.  First, as
Medea points out, such allegation was not made in the verified complaint, D. 139 at 2, and
"summary judgment is not a procedural second chance to flesh out inadequate pleadings,"
<u>Fleming v. Lind-Waldock & Co.</u>, 922 F.2d 20, 24 (1st Cir. 1990).  Second, even if this "market
demand" allegation had been included in the complaint, it fails because Plaintiffs do not specify
the time, place and content of Medea's alleged false statements regarding same as required by
Rule 9(b) except as to the purchase orders specified in the complaint and discussed above.  For at
least these reasons, Plaintiffs' new allegation in this regard is not a basis for denying summary
judgment to Medea.